# EXHIBIT "B"

# EXHIBIT "B"

Electronically Filed
9/4/2022 2:02 PM
Steven D. Grierson
CLERK OF THE COURT

CASE NO: A-22-857909-C
Department 27

**COMP**
JEFFREY GRONICH, ATTORNEY AT LAW, P.C.
Jeffrey Gronich, Esq. (#13136)
1810 E. Sahara Ave., Suite 109
Las Vegas, Nevada 89104
Tel:   (702) 430-6896
Fax:   (702) 727-3903
jgronich@gronichlaw.com
*Attorney for Plaintiff Kathy Severson*

## EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| KATHY SEVERSON an individual; <br><br> Plaintiff, <br><br> vs. <br><br> ABSOLUTE DENTAL GROUP, LLC.; EMPLOYEE(S) / AGENT(S) DOES 1-10; and ROE CORPORATIONS 11-20, inclusive <br><br> Defendants. | Case No. <br> Dept.: <br><br> **COMPLAINT** <br><br> **(Jury Demand)** <br><br> ARBITRATION EXEMPT – AMOUNT IN CONTROVERSY EXCEEDS $50,000 |

COMES NOW Plaintiff KATHY SEVERSON, ("Severson" or "Plaintiff") by and through her attorney of record Jeffrey Gronich, Esq., and hereby complains of Defendant ABSOLUTE DENTAL GROUP, LLC. ("ADG" or "Defendant") as follows:

### PARTIES

1. Plaintiff is and was at all times relevant a resident of the state of Arizona.

2. Plaintiff is informed and believes and thereon alleges that at all times relevant, Defendant was at all times relevant operating and doing business throughout the state of Nevada and was registered with the Nevada Secretary of State.

3. At all times relevant, Defendant was Plaintiff's employer as such term is defined in 42 U.S.C. §12111 *et. seq.* and NRS Chapter 613 *et. seq.*

Page 1 of 13

4. At all times relevant, Plaintiff was an employee of Defendants as that term is defined in 42 U.S.C. §12111 *et. seq.* and NRS Chapter 613 *et. seq.*

5. Based upon information and belief, Defendant had the ability and authority to hire and terminate Plaintiff; supervise and control her employment; and determine her rate and method of payment.

6. The true names and capacities, whether individual, corporate, associate or otherwise of other Defendants hereinafter designated as Does 1-10 and Roe Corporations 11-20, inclusive, who are in some manner responsible for the injuries described herein, who are Plaintiffs' employer, are unknown to Plaintiffs at this time who therefore sues said Defendants by such fictitious names and will seek leave of the Court to amend this Complaint to show their true names and capacities when ascertained.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiffs' claims because the acts and omissions of the Defendants occurred in the state of Nevada and Plaintiffs' damages exceed $15,000.00.

8. This Court also has jurisdiction over Plaintiffs' claims because the claims arise under the laws of the State of Nevada.

9. The Court also has jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. §12117 & 42 U.S.C. §2000e-5 which states in relevant part that this action may be maintained in any Federal or State court of competent jurisdiction.

10. Venue is appropriate because Defendant maintains a principal office in Clark County, Nevada at 2250 S. Rancho Drive, Suite 205, Las Vegas, NV 89102.

## PROCEDURAL REQUIREMENTS

11. Plaintiff has satisfied all administrative and procedural requirements necessary to maintain this lawsuit.

12. Plaintiff timely filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within the requisite time frame provided under 29 U.S.C. §2000e-5(e), having made an initial inquiry on April 7, 2021 and having filed a charge of discrimination on October 7, 2021. A true copy of Plaintiff's Amended Charge of Discrimination is attached hereto as Exhibit I. Such allegations of Exhibit I are hereby incorporated into this Complaint.

13. On or about June 6, 2022, the EEOC issued Plaintiff a Right to Sue. This Complaint has been timely filed within 90 days of Plaintiff's receipt of such Right to Sue. A copy of this Right to Sue is attached hereto as Exhibit II.

## FACTUAL ALLEGATIONS

14. Plaintiffs repeat and realleges all the allegations contained in Paragraphs 1 through 13 of this Complaint as though fully set forth herein.

15. Plaintiff was hired by ADG on or about August 10, 2019 as a Director of Operations for Northern Nevada.

16. At the time she was hired, and throughout her entire employment, Plaintiff resided in the state of Arizona.

17. As a Director of Operations, Plaintiff was responsible for overseeing and managing teams of offices in the greater Reno area. Her job duties included hiring medical personnel, supervising the office staff, and ensuring that the offices were run according to the standards and practices set by ADG.

18. Although most of this work could be performed remotely from her home in Arizona, Plaintiff did travel to Reno once a week for in-person office visits. These in-person meetings were generally relatively brief and not central to the performance of her duties.

19. Upon her hire, Plaintiff discussed relocating to Reno, and ADG informed her that

they expected her to move from her Arizona residence to the Reno area. Plaintiff therefore made plans to move to Reno in early 2021 and communicated those plans to Defendant.

20. In February of 2020, Plaintiff was laid off as a result of the COVID-19 crisis.

21. In May of 2020, she was re-hired to her same position.

22. At the time of her re-hire, ADG only required her to make the in-person office visits once every other week due to COVID-19 restrictions.

23. Plaintiff obliged and continued to perform her duties to ADG's satisfaction. At no point during her employment did she receive any disciplinary action or write ups, and she was generally praised for her performance.

24. Following her re-hire, ADG inquired about her relocation status, which she reminded them would take place in the early part of 2021 due to her son's schooling.

25. In or about August of 2020, Plaintiff was diagnosed with diabetes. Being in a high-risk group for COVID-19, Plaintiff became concerned about potential exposure to the virus.

26. Towards November of 2020, when Nevada's COVID-19 rate spiked, Plaintiff asked for a reasonable accommodation of solely working remotely and to not make in-person office visits.

27. During the interactive process of discussing her request, Plaintiff assured ADG that the accommodation would only be required until she could receive a vaccine, at which time she would resume the in-person visits.

28. Her request was approved in November, and Plaintiff ceased making those in-person visits.

29. However, upon the approval of the accommodation, Defendant brought to Plaintiff's attention concerns about her performance from February of that year – ten months earlier, and from a few months prior. Plaintiff denies ever having been notified about those complaints at the time they were allegedly made.

Page 4 of 13

30. Additionally, just after her reasonable accommodation request was granted, Plaintiff noticed her supervisor and the Vice President of Operations, Pete Siegle, began acting differently toward her.

31. For example, he singled her out in staff meetings and embarrassed her for not being physically present in the office, continuously asked her when she would be returning to the office, and was generally cold toward her.

32. In or about late December or early January of 2021, Plaintiff informed ADG that she was putting her house up for sale to prepare for her relocation. ADG commended her decision and continued to engage her in preparation for that move.

33. In or about the week of January 10, 2021, Plaintiff sold her house in Arizona in anticipation of moving to Reno for her work.

34. Plaintiff informed ADG about the sale of her house at that time.

35. On January 19, 2021, a week after Plaintiff sold her house, ADG terminated her employment, citing her inability to be physically present in the Reno area

**FIRST CLAIM FOR RELIEF**
**DISABILITY DISCRIMINATION**
**42 U.S.C. §12111 et. seq. / NRS 613.330**

36. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 35 of this complaint as though fully set forth herein.

37. 42 U.S.C. §12112 and NRS 613.330 provide that it is unlawful for an employer to discharge from employment a qualified individual on the basis of her disability.

38. At all times relevant, Plaintiff was an individual under the Americans with Disabilities Act as Amended ("ADA") in that she was an individual with a physical impairment that substantially limited one or more major life activities (diabetes), had a record of such impairment, and/or who was a person who was regarded and/or perceived as having such an

Page 5 of 13

impairment or disability.

39. Throughout her employment, and specifically after she was diagnosed with diabetes in August of 2020, Plaintiff could and did perform the essential functions of her job, with or without an accommodation,

40. Plaintiff was at all times relevant performing her job in a satisfactory manner. At no point during her employment prior to November of 2020 was she ever given reprimands, or write ups about her performance, nor was she placed on a performance improvement plan or given any counseling about her job performance.

41. After she notified her employer about her disability and requested a reasonable accommodation, they began to treat her differently.

42. Specifically, when Defendant approved her reasonable accommodation request in November of 2020, they brought up performance issues which had occurred months prior. Defendant also singled her out, embarrassed her in front of her coworkers, and acted coldly toward her.

43. In January of 2021, Plaintiff's employment was terminated.

44. Defendant's reason for terminating Plaintiff was her inability to be physically present in the office – a circumstance which was a direct result of her disability and for which she had requested a reasonable accommodation.

45. Accordingly, Plaintiff was very clearly terminated because of her disability in violation of the provisions of 42 U.S.C. §12112 and NRS 613.330.

46. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in an amount in excess of $15,000.

47. As a further result of Defendant's actions, Plaintiff has been required to retain the services of an attorney, and, as a direct, natural, and foreseeable consequence thereof, has been

damaged thereby, and is entitled to reasonable attorneys' fees and costs.

48. Defendant is also guilty of oppression, fraud, or malice, express or implied, as well as a conscious disregard for Plaintiff's rights. Therefore, Plaintiff is entitled to recover punitive damages.

## SECOND CLAIM FOR RELIEF
## FAILIRE TO ACCOMMODATE
## 42 U.S.C. §12111 *et. seq.* / NRS 613.330

49. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 48 of this complaint as though fully set forth herein.

50. Plaintiff requested and was granted a reasonable accommodation based on her high-risk status that she be allowed to work only remotely until she could obtain the COVID-19 vaccine.

51. This accommodation was reasonable because in-person office visits were not a critical component of her job duties and could be conducted remotely via video-conference or other virtual means. Even if it was not the **_most_** effective means of doing the job, it was not essential that she be there in person.

52. However, ADG **_only_** granted her this accommodation for a single month, even though it was clear at the time that Plaintiff asked for the accommodation that it would be necessary to be in place until she could obtain a vaccine, which could have been anywhere from one to four months after her request.[1]

53. ADG's accommodation was not negotiable and was extremely limited.

54. Then, shortly after the month had ended, ADG unilaterally terminated Plaintiff's employment without exploring the possibility of other potential accommodation options where she could remain employed.

---

[1] Although in retrospect we know exactly how long it took for Plaintiff to get the vaccine, in late 2020 there were still some questions as to how long Plaintiff could expect to wait to receive the vaccine based on her disability status.

55. ADG cannot show that allowing Plaintiff to continue to work remotely would impose an undue hardship.

56. Moreover, ADG failed to engage in the interactive process by terminating Plaintiff's employment instead of engaging in a dialogue to determine whether there was a different or alternative accommodation available to Plaintiff.

57. Accordingly, ADG failed to engage in good faith in the interactive process which is a violation of the requirements of the ADA.

58. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in an amount in excess of $15,000.

59. As a further result of Defendant's actions, Plaintiff has been required to retain the services of an attorney, and, as a direct, natural, and foreseeable consequence thereof, has been damaged thereby, and is entitled to reasonable attorneys' fees and costs.

60. Defendant is also guilty of oppression, fraud, or malice, express or implied, as well as a conscious disregard for Plaintiff's rights. Therefore, Plaintiff is entitled to recover punitive damages.

### THIRD CLAIM FOR RELIEF
### RETALIATION
### 42 U.S.C. §12111 et. seq. / NRS 613.330

61. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 60 of this complaint as though fully set forth herein.

62. Plaintiff engaged in protected activity when she requested a reasonable accommodation for her disability in November of 2020.

63. Prior to that date, Plaintiff had not been given any discipline or poor performance reviews, and she got along well with her coworkers and supervisors.

64. Once she requested the reasonable accommodation, she was immediately given

notice about performance issues which had occurred months earlier. Defendant also singled her out, embarrassed her in front of her coworkers, and acted coldly toward her.

65. The retaliation culminated with her termination merely weeks after her request.

66. The harsh treatment she received immediately after her request accentuates the likelihood that her termination was based on retaliation for requesting the reasonable accommodation and not because of any perceived "performance issues."

67. Moreover, Defendant waited until Plaintiff was the most vulnerable before terminating her.

68. ADG knew that Plaintiff's house was on the market in either late December of 2020 or January of 2021, shortly after she requested the accommodation. If they knew they wanted to terminate her employment because of performance issues, surely they knew that by early January. Instead of telling her not to sell her house and not to move to Reno, they specifically waited until *after* she sold her house to terminate her employment.

69. ADG specifically waited to terminate her until after she sold her house as a way of further retaliating against her.

70. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in an amount in excess of $15,000.

71. As a further result of Defendant's actions, Plaintiff has been required to retain the services of an attorney, and, as a direct, natural, and foreseeable consequence thereof, has been damaged thereby, and is entitled to reasonable attorneys' fees and costs.

72. Defendant is also guilty of oppression, fraud, or malice, express or implied, as well as a conscious disregard for Plaintiff's rights. Therefore, Plaintiff is entitled to recover punitive damages.

# FOURTH CLAIM FOR RELIEF
## TORTIOUS DISCHARGE
**TERMINATING EMPLOYEE WHO REFUSES TO WORK IN UNSAFE CONDITIONS**

73. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 72 of this complaint as though fully set forth herein.

74. Defendant terminated Plaintiff for reasons that violate Nevada's public policy against terminating an individual for seeking a safe and healthy work environment.

75. Specifically, in 2020, the CDC listed persons with diabetes as being at high risk of severe illness if they catch COVID-19 and at that time believed that transmission of COVID-19 occurs more easily through close contact from respiratory droplets which may linger in the air.

76. Dental offices can be particularly high-risk locations because patients are not wearing masks during their appointments. Additionally, even with the best practices to reduce their emission, respiratory droplets can be exacerbated by certain dental procedures and instruments.

77. As the office is indoors, those droplets can linger for a longer time, causing other individuals in the office to be more exposed.

78. Even if she wears a mask, there was still a significant risk of Plaintiff catching COVID-19 had she continued to make in-person appearances in ADG's offices.

79. Nothing about her job duties required Plaintiff to be physically present in the dental office and for her, the office is a significantly more dangerous place than the average person.

80. Plaintiff accordingly sought a safe work environment – a remote one.

81. Nevada law requires that employers protect the lives, safety, and health of their employees; and prohibits them from requiring employees "to go or be in any place of employment which is not safe and healthful."

82. ADG wanted Plaintiff to be physically present in the office. For her, that would have been unreasonably unsafe. However, ADG refused to allow to her continue to work remotely so

that she could be safe. Instead, they forced her to choose between her health – potentially her life – and her job.

83. Accordingly, by terminating her employment for seeking a safe work environment, ADG is in violation of Nevada public policy and is liable to Plaintiff for tortious discharge.

84. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in an amount in excess of $15,000.

85. As a further result of Defendant's actions, Plaintiff has been required to retain the services of an attorney, and, as a direct, natural, and foreseeable consequence thereof, has been damaged thereby, and is entitled to reasonable attorneys' fees and costs.

86. Defendant is also guilty of oppression, fraud, or malice, express or implied, as well as a conscious disregard for Plaintiff's rights. Therefore, Plaintiff is entitled to recover punitive damages.

## FIFTH CLAIM FOR RELIEF
## NRS 613.010

87. Plaintiff repeats and realleges all the allegations contained in Paragraphs 1 through 86 of this Complaint as though fully set forth herein.

88. NRS 613.010 specifically prohibits an employer from inducing, influencing, persuading or engaging workers to move to this state through means of false or deceptive representations, false advertising or false pretenses and allows for an aggrieved individual to maintain a private right of action for any damages sustained.

89. ADG induced Plaintiff to move from Arizona to Nevada on the promise of continued employment.

90. ADG first persuaded Plaintiff to move to Nevada in the middle of 2020, and she understood that if she did not move to Nevada that her job would be in jeopardy.

91. Accordingly, she agreed to move to Nevada in order to keep her job.

92. In December of 2020 or January of 2021, Plaintiff listed her Arizona home for sale and notified her employer of that fact and that she would soon be moving to Reno for her work.

93. ADG was thus aware that Plaintiff had listed her house for sale in December of 2020 or January of 2021.

94. On January 10, 2021, Plaintiff sold her house and notified Defendant of that fact.

95. Up to that point, ADG had never indicated to Plaintiff that her that her job status was ever in doubt and continued to represent to her that her employment was safe throughout the end of 2020 and into 2021.

96. Even when she informed ADG that she was selling her house, they continued to let her believe that she would continue working for them.

97. Nevertheless, ADG knew that it had no intention of allowing Plaintiff to continue to work for them.

98. This is shown because the reason given for the termination was that she was not physically present in the office. However, Plaintiff had not been physically present in the office for months and Defendant knew that the reason she sold her house was to move to Reno in order to be physically present at the office once she obtained her vaccine.

99. ADG knew prior to her termination date that they intended to terminate her employment. But they did not inform her until *after* she had sold her house.

100. Because ADG knew that they were going to terminate Plaintiff's employment while they continued to encourage her to sell her home and move to Nevada, they are in violation of NRS 613.010.

101. As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has sustained damages in excess of $15,000.

Page 12 of 13

102. As a result of Defendants' conduct, as set forth herein, Plaintiff has been required to retain the services of an attorney, and, as a direct, natural, and foreseeable consequence thereof, has been damaged thereby, and is entitled to reasonable attorneys' fees and costs.

103. Defendants have acted willfully and maliciously, and with oppression, fraud, or malice, and as a result of Defendants' wrongful conduct, Plaintiff is entitled to an award of exemplary or punitive damages.

**WHEREFORE**, Plaintiffs pray for a judgment against Defendants as follows:

1. For general, special, and consequential damages in excess of $15,000.00;
2. For compensatory damages in excess of $15,000.00;
3. For punitive damages in excess of $15,000.00;
4. For pre and post judgment interest as allowed by law;
5. For attorneys' fees and costs incurred in this action; and
6. For such other additional relief as the Court deems just and proper.

Dated this 4th day of September, 2022

Respectfully submitted,

By: /s/ Jeffrey Gronich
Jeffrey Gronich, Esq.
Jeffrey Gronich, Attorney at Law, P.C.
1810 E. Sahara Ave. Suite 109
Las Vegas, NV 89104
Tel   (702) 430-6896
Fax   (702) 727-3903

Page 13 of 13

# EXHIBIT I

EEOC Form 5 (11/09)

# AMENDED CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA<br>☒ EEOC | 487-2021-00975 |

**NEVADA EQUAL RIGHTS COMMISSION** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| **KATHY S SEVERSON** | **(480) 543-8007** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **2041 E. AUGUSTA AVE, CHANDLER, AZ 85249** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **ABSOLUTE DENTAL GROUP, LLC.** | **15 - 100** | **(702) 291-2031** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2250 S. RANCHO DR., SUITE 205, LAS VEGAS, NV 89102** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (*Specify*)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **11-26-2020**   Latest: **01-19-2021**

☒ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

**In or around August 2019, I was hired by ABSOLUTE DENTAL GROUP, LLC., as the Regional Director of Operations for Northern Nevada. In or around late November 2020, my medical doctor informed ABSOLUTE DENTAL GROUP, LLC. regarding my medical condition and need for a reasonable accommodation. A reasonable accommodation was granted to allow me to work remotely full time. In or around December 2020, I contacted Human Resources when I noticed Pete Siegle, Vice President of Operations, acting differently with me. For example, when Mr. Siegle would speak with me, he would ask me when I was returning to work in person. In January 2021, I was harassed by Pete Siegle, Vice President of Operations. For example, but not limited to, Mr. Siegle saying, 'thank you for the directors that are working in the office and risking their lives', daily during morning group calls. Subsequently, I was discharged on or about January 19, 2021. I believe I was discriminated against because of my disability and retaliated against for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.**

| | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally signed by Kathy S Severson on 10-15-2021 12:07 PM EDT** | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

# EXHIBIT II

EEOC Form 161-B (01/2022)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**NOTICE OF RIGHT TO SUE** *(ISSUED ON REQUEST)*

| To: | Kathy S. Severson<br>2041 E. Augusta Ave<br>**CHANDLER, AZ 85249** | From: | **Las Vegas Local Office<br>333 Las Vegas Blvd South, Suite 5560<br>Las Vegas, NV 89101** |
|---|---|---|---|

| EEOC Charge No.<br>**487-2021-00975** | EEOC Representative<br>**Kathryn Gibson,<br>Federal Investigator** | Telephone No.<br>**702-553-4461** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

    More than 180 days have passed since the filing of this charge.

    The EEOC is terminating its processing of this charge.


***Equal Pay Act (EPA):*** *You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that* ***backpay due for any violations that occurred more than 2 years (3 years)*** *before you file suit may not be collectible.*


If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By:Christine Park-Gonzalez
06/06/2022

**Christine Park-Gonzalez
Acting District Director**

Enclosures(s)

cc: **Bruce Young
byoung@garggolden.com
Ana Prince
ABSOLUTE DENTAL GROUP, LLC.
aprince@absolutedental.com
Jeffrey Gronich
Jeffrey Gronich, Attorney at Law, P.C.
jgronich@gronichlaw.com**

**Jeffrey Gronich
jgronich@gronichlaw.com**