UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KATHY SEVERSON,                             )<br>                                                          )<br>            Plaintiff,                              )<br>       vs.                                              )<br>                                                          )<br>ABSOLUTE DENTAL GROUP, LLC, *et al.*, )<br>                                                          )<br>            Defendants.                          )<br>_____ )   | Case No.: 2:22-cv-01916-GMN-VCF<br><br>**ORDER** |

Pending before the Court is Defendant Absolute Dental Group, LLC's ("Defendant's") Motion to Dismiss, (ECF No. 5). Plaintiff Kathy Severson ("Plaintiff") filed a Response, (ECF No. 12), and Defendant filed a Reply, (ECF No. 15).

For the reasons discussed below, the Court **GRANTS** Defendant's Motion to Dismiss.

**I.    BACKGROUND**

This case arises from Defendant's alleged wrongful termination of Plaintiff because of her disability. (*See generally* Compl., Ex. B to Pet. Removal, ECF No. 1-4). Plaintiff, a citizen of Arizona, was hired by Defendant, a Nevada corporation, to serve as a Director of Operations for Northern Nevada in August 2019. (*Id*. ¶¶ 1–2, 15, Ex. B to Pet. Removal). Plaintiff primarily performed her work from her residence in Arizona, but traveled to Reno, Nevada "once a week for in-person office visits." (*Id*. ¶ 18, Ex. B to Pet. Removal).

When Plaintiff was hired, Defendant purportedly informed her that it "expected her to move from her Arizona residence to the Reno area." (*Id*. ¶ 19, Ex. B to Pet. Removal). Plaintiff asserts she informed Defendant that she made plans to move to Reno in early 2021. (*Id*. ¶ 20, Ex. B to Pet. Removal). In February 2020, Plaintiff was laid off a result of the COVID-19 crisis but was rehired in May 2020 to her same position. (*Id*. ¶ 20–21, Ex. B to Pet. Removal).

Following her rehiring, Plaintiff was only required to make the in-person office visits every other week because of the COVID-19 pandemic. (*Id.* ¶ 22, Ex. B to Pet. Removal).

In August 2020, Plaintiff was diagnosed with diabetes, a condition elevating the risk Plaintiff would become severely ill if she contracted COVID-19. (*Id.* ¶ 25, Ex. B to Pet. Removal). In November 2020, Plaintiff asked for a "reasonable accommodation of solely working remotely and" not making in-person office visits in response to a spike in the COVID-19 rate. (*Id.* ¶ 26, Ex. B to Pet. Removal). Plaintiff allegedly assured Defendant the accommodation would cease once she received a COVID-19 vaccine, and Defendant subsequently approved the accommodation. (*Id.* ¶ 27–28, Ex. B to Pet. Removal).

In late December or early January 2021, Plaintiff asserts that she informed Defendant she was putting her house for sale in preparation for her relocation. (*Id.* ¶ 32, Ex. B to Pet. Removal). Defendant purportedly commended Plaintiff for her decision. (*Id.* ¶ 33, Ex. B to Pet. Removal). Around January 10, 2021, Plaintiff sold her Arizona home and notified Defendant of the sale. (*Id.* ¶ 34, Ex. B to Pet. Removal). On January 19, 2021, Defendant terminated Plaintiff, allegedly citing "her inability to be physically present in the Reno area." (*Id.* ¶ 35, Ex. B to Pet. Removal).

On November 14, 2022, Plaintiff filed the instant Complaint in the Eighth Judicial District Court of Nevada, asserting the following claims: (1) unlawful discrimination in violation of the American Disabilities Act and Amendments Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, and NRS § 613.330 *et. seq.*; (2) failure to accommodate in violation of the ADA, 42 U.S.C. § 12111 *et seq*, and NRS § 613.330 *et. seq.*; (3) retaliation in violation of 42 U.S.C. § 12111 *et seq.*, and NRS § 613.330 *et. seq.*; (4) tortious discharge; and (5) violation of NRS § 613.010. (*Id.* ¶¶ 36–103, Ex. B to Pet. Removal). Defendant subsequently removed this case to this Court based on federal question jurisdiction, (Pet. Removal, ECF No. 1), and filed the

///

instant Motion to Dismiss. (*See generally* Mot. Dismiss ("MTD"), ECF No. 5). The Court discusses Defendant's Motion to Dismiss below.

## II.     LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. DISCUSSION

As stated, Plaintiff's Complaint asserts the following claims: (1) unlawful discrimination in violation of the American Disabilities Act and Amendments Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, and NRS § 613.330 *et. seq.*; (2) failure to accommodate in violation of the ADA, 42 U.S.C. § 12111 *et seq.*, and NRS § 613.330 *et. seq.*; (3) retaliation in violation of 42 U.S.C. § 12111 *et seq.*, and NRS § 613.330 *et. seq.*; (4) tortious discharge; and (5) violation of NRS § 613.010. (*Id.* ¶¶ 36–103, Ex. B to Pet. Removal).

By the instant Motion, however, Defendant only moves to dismiss Plaintiff's fourth and fifth causes of action for tortious discharge and violation of NRS § 613.010. (MTD 2:24–3:8). The Court discusses these claims below, beginning with Plaintiff's tortious discharge claim.

### A. Tortious Discharge

"An employer commits a wrongful termination (primarily known in Nevada jurisprudence as tortious discharge) 'by terminating an employee for reasons that violate public policy.'" *Sanders v. Sodexo, Inc.*, No. 2:15-cv-00371, 2015 WL 4477697, at *3 (D. Nev. July 20, 2015) (quoting *D'Angelo v. Gardner*, 819 P.2d 206, 212 (Nev. 1991)). Public policy may be violated when an employee is terminated for "(1) refusing to violate the law, (2) performing jury duty, (3) filing a workers' compensation claim or seeking industrial insurance, (4) refusing

to work in unreasonable and dangerous conditions, and (5) whistle blowing." *Id.* (internal citations omitted). Here, Plaintiff's claim is brought under the fourth exception, termination for refusal to work in unreasonable and dangerous conditions. (Resp. 8:5–12:9, ECF No. 12). Specifically, Plaintiff alleges that Defendant's failure to "abide by the guidelines promulgated by [Nevada's Occupational Safety and Health Administration ("OSHA")] and the Governor regarding transmission of COVID-19" by requiring her to make in-person office visits created unreasonable and dangerous working conditions. (*Id.* 12:10–15).

The Nevada Supreme Court has held that "the public policy of this state favors safe employment practices and the protection of health and safety of workers on the job." *Western States Mineral Corp. v. Jones*, 819 P.2d 206, 216 (Nev. 1991). As a result, "it is violative of public policy for an employer to dismiss an employee for refusing to work under conditions unreasonably dangerous to the employee." *Id.* Despite the foregoing, the Court finds for the reasons set forth below that "Plaintiff's tortious discharge claim is preempted because [she] has failed to allege any facts that show a violation of Nevada's public policy on occupational health and safety." *Schafer v. Safeway Stores, Inc.*, No. 3:08-cv-00299, 2009 WL 275641, at *4 (D. Nev. Feb. 4, 2009).

As stated above, Plaintiff relies on guidelines promulgated by Nevada OSHA and then-Governor Steve Sisolak regarding the transmission of COVID-19. The specific provision relied on by Plaintiff in her Response states that:

> All vulnerable individuals should continue to shelter in place. Members of households with vulnerable residents should be aware that by returning to work or other environments where distancing is not practical, they could carry the virus back home. Precautions should be taken to isolate from vulnerable residents.

(Phase 2 Guideline at 4, Ex. 1 to Resp., ECF No. 12-1); (Resp. 9:12–24). To be sure, this recommendation implicates important concerns related to health and safety. But contrary to

///

Plaintiff's assertion, this provision does not sustain a cause of action for tortious discharge for two reasons.

To begin, this provision is contained in the guideline section dedicated to issuing recommendations to *individuals* rather than *businesses* and *employers*. (*Compare* Phase 2 Guideline at 4 *with* Phase 2 Guideline at 5–6, Ex. 1 to Resp.). The Court is skeptical that a claim for tortious discharge, which at bottom arises from a wrongful employment decision, could arise from a provision promulgating guidance directed at individuals. Second, even assuming this provision did apply to employers, this guideline provision merely *encourages* individuals to stay home, as indicated by the word "should." (Phase 2 Guideline at 4, Ex. 1 to Resp.). A generalized instruction mandating accommodations or permitting employees to work from home is not enshrined in this provision. Instead, it is a mere recommendation. The Court is hesitant to pronounce that this discretionary provision constitutes an articulable and recognizable public policy that can premise a tortious discharge claim. *See, e.g., Law v. Kinross Gold U.S.A., Inc.*, 651 F. App'x 645, 649 (9th Cir. 2016) ("[Plaintiff] has failed to show that this is the kind of rare and exceptional case . . . sufficient to state a cause of action cognizable under Nevada law.").

If anything, the more applicable provision based on Plaintiff's underlying cause of action is found in the guideline section directed at businesses and employers. (*See* Phase 2 Guideline at 6, Ex. 1 to Resp.) (promulgating guidance for "businesses and employers"). This section begins by stating that "all businesses and employers are encouraged to adopt and/or take the following actions[.]" (*Id.*, Ex. 1 to Resp.). As with the provision examined above, the word "encouraged" indicates the actions which follow are discretionary rather than mandatory. Here, there are two actions relevant to Plaintiff's claim. The first states that businesses are to "continue to encourage telework, whenever possible and feasible with business operations." (*Id.*, Ex. 1 to Resp.). The second, explains that businesses and employers should "strongly consider special

///

accommodations for personnel who are members of a vulnerable population." (*Id.*, Ex. 1 to Resp.).

The foregoing is replete with discretionary, rather than mandatory, language. The Court is dubious of considering these discretionary guidelines as proper sources for a clear mandate of public policy under Nevada law.[1] Indeed, Plaintiff fails to provide the Court with precedent to support her argument that discretionary policies can constitute a source of a clear mandate of public policy. There is no doubt that compliance with the guidelines provided implicate important concerns related to health and safety. But that does not give this Court license to expand the public policy exception to encompass discretionary guidelines that advance these purposes. *See Borodkin v. Omni Area International, Inc.*, No. 2:05-cv-1414, 2006 WL 8446635, at *6 (D. Nev. Oct. 4, 2006) (observing that the state of Nevada had not recognized that that the public policy identified by the plaintiff was the "public policy of the [s]tate of Nevada" in dismissing the plaintiff's tortious discharge claim). Accordingly, the Court finds that the present circumstances and policies at issue do not constitute one of these rare and exceptional cases sufficient to sustain a tortious discharge claim. Because the policy underlying Plaintiff's tortious discharge claim is insufficient to sustain this cause of action, the Court will dismiss this claim without leave to amend. See *Thimes Solutions Inc. v. TP Link USA Corp.*, No. 19-cv-10374, 2020 WL 6154192, at *2 (C.D. Cal. Aug. 31, 2020) ("A motion for leave to amend should be denied on futility grounds when 'no sets of facts can be proved under

---

[1] In extraordinary times, like those caused by COVID-19, it is the prerogative, and perhaps the obligation, of the executive branch to take decisive action to spur mitigation efforts. The Court neither questions then Governor Sisolak's policies with respect to COVID-19 mitigation, nor suggests that businesses or citizens should disregard these recommendations. The Court's trepidation is caused by its awareness of its role in our system of government. Here, the Court is hesitant to pronounce that an employment decision potentially inconsistent with an executive branch's discretionary COVID-19 mitigation efforts clearly violates public policy where there is no affirmative indication that the legislature or general public would concur in these policies. It is likely for this reason why the policy was left discretionary in nature. A claim for tortious discharge exists only in "those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." *Sands Regent*, 777 P.2d at 900. The circumstances and policies at issue do not constitute one of these rare and exceptional cases.

the amendment . . . that would constitute a valid and sufficient claim or defense.") (quoting *B-K Lighting, Inc. v. Fresno Valves & Casting*, No. 06-cv-02825, at *3 (C.D. Cal. Jan. 7, 2008)

### B. NRS § 613.010

Pursuant to NRS § 613.010, Nevada's "luring" statute, "[i]t is unlawful for a person" or entity "to induce, influence, persuade or engage workers to change from one place to another in this state, or to bring workers of any class or calling into this state . . . through means of false or deceptive representations, false advertising, or false pretenses" concerning the "kind and character of the work to be done." NRS § 613.010(1)(c); *see Cundiff v. Dollar Loan Center LLC*, 726 F. Supp. 2d 1232, 1240 (D. Nev. 2010). NRS § 613.010(3) in turn provides that "any worker of this state or any worker of another state who has been or shall be influenced . . . shall have a cause of action for recovery" for all damages sustained because of the "false advertising or false pretenses used to induce the worker to change his or her place of employment, or place of abode . . . ." *Id.*

Defendant contends that Plaintiff's NRS § 613.010 claim fails for two reasons: (1) NRS § 613.010 is inapplicable because Plaintiff never actually moved to Arizona, and (2) Plaintiff failed to plead her claim with the required specificity. (MTD 11:3–12:26); (Reply 6:16–7:27, ECF No. 15). In response, Plaintiff contends that the express language of NRS § 613.010 does not require a worker to move to Nevada, and that her claim is otherwise adequately plead. (Resp. 13:15–16:15). The Court will first examine Defendant's contention that a *prima facie* claim under NRS § 613.010 requires the individual to physically relocate to Nevada.

To date, the Supreme Court of Nevada has not addressed this precise issue. Therefore, the Court must predict how the Supreme Court of Nevada would resolve this issue. *See Giles v. Gen Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (quotation omitted) ("Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it."). The Supreme Court of Nevada has often turned to

California decisions when faced with issues of first impression. *See, e.g., Volvo Cars of North America, Inc. v. Ricci*, 137 P.3d 1161, 1161 (Nev. 2006); *Cheung v. Eighth Judicial Dist. Court*, 124 P.3d 550, 559 (Nev. 2005); *Hansen v. State Farm Mut. Auto. Ins. Co.*, No. 2:10-cv-01434, 2012 WL 6205722, at *5 (D. Nev. Dec. 12, 2012) (noting the "'Nevada courts' tradition of looking to California law where Nevada law is silent"); *Sierra v. Desert Palace, Inc.*, No. 2:12-cv-00230, 2013 WL 1266639, at *5 (D. Nev. Feb. 27, 2013) (observing that "Nevada courts traditionally look to California law where Nevada law is silent"). Accordingly, the Court will also turn to California law in this case.

California, like Nevada, has a "luring" statute codified at California Labor Code § 970.

California Labor Code § 970 provides, in relevant part, as follows:

> No person or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State . . . through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either:
> (a)  The kind, character, or existence of such work;
>
> (b)  The length of time such will work will last, or the compensation therefore[.]

Cal. Labor Code § 970. As shown above, both California Labor Code § 970 and NRS § 613.010 utilize the phrase "to change from one place to another in this state."

In *Stevens v. Thomas Keller Restaurant Group*, the United States District Court for the Northern District of California addressed the meaning of the words "change from one place to another," in Cal. Labor Code § 970, which it found to be ambiguous. No. 09-cv-0622, 2009 WL 3841879, at *3 (N.D. Cal. Nov. 17, 2009). In that case, the plaintiff was offered a job by the defendants as a general manager at a Bouchon restaurant in Yountville, California. *Id.* at *1. The plaintiff alleged that after he accepted the job, he took steps to "effect his relocation to California—*e.g.*, by signing a rental lease for a house in Napa and by signing a contract and

paying a deposit to have his car shipped to Las Vegas where he was to be trained prior to working at the Yountville restaurant." *Id*.  Shortly before the plaintiff was to leave for Las Vegas, however, the defendants informed him they were rescinding the job offer.

The *Stevens* court, relying on California cases that addressed the purposes of Cal. Labor Code § 970, determined that the statute had two purposes: (1) to protect the employee from unscrupulous employers who might make false promises to induce the employee to move; and (2) to protect the community "from the harm inflicted when a fraudulently induced employment ceases and the former employee is left in the community without roots or resources and becomes a charge on the community." *Id*. at *3–4.  The court further found that § 970 "is particularly targeted to employees who have in fact changed residence (and thus incurred the full scope of reliance costs unlike those who only contemplate or begin the process of moving)." *Id*. at *3.  The court concluded that a "change from one place to another" requires that a plaintiff must have physically relocated and that it is not enough to have "taken steps" to relocate. *Id.*

The Court finds the reasoning of the *Stevens* court instructive as to the application of NRS § 613.010.  Like Cal. Labor Code § 970, the language of NRS § 613.010 differentiates between actual relocation versus placing reliance on a representation to relocate without complete consummation of the undertaking of relocation.  Here, Plaintiff alleges that she sold her Arizona residence on January 19, 2021, with the intention to move to Reno, Nevada.  Thus, Plaintiff adequately alleges that she took an initial step towards relocating to Nevada.  However, as in *Stevens*, although Plaintiff allegedly prepared to move, her Complaint fails to allege that she actually relocated when her employment was terminated.  Specifically, Plaintiff neither alleges that she purchased a home in Nevada, nor that she actually moved to Nevada in

///

///

the week following the sale of her Arizona home, but prior to her termination.[2]  "Under [these] circumstances, the potential burden on the local community . . . does not come into play." *Munson v. Splice Communications, Inc.*, No. 12-cv-05089, 2013 WL 6659454, at *23 (N.D. Cal. Dec. 16, 2013).  As Plaintiff does not allege that she physically relocated to Nevada, her claim under NRS § 613.010 fails as a matter of law.  Because this claim could be fixed by amendment, the Court will grant leave to amend.[3]

In sum, the Court DISMISSES with prejudice Plaintiff's claim for tortious discharge and DISMISSES without prejudice Plaintiff's claim under NRS § 613.010.  If Plaintiff chooses to file an amended complaint to cure the deficiencies identified by this Order, she must do so no later than **April 24, 2023**.  Failure to file an amended complaint will result in dismissal of her claim under NRS § 613.010 being converted to a dismissal with prejudice.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 5), is **GRANTED**.

**DATED** this __1__ day of April, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

---

[2] It is the act of relocation rather than the duration that is relevant for determining the applicability of NRS § 613.010. *See Asnaashari v. PNY Technologies, Inc.*, No. 2:13-cv-1308, 2013 WL 2403605, at *2 (N.D. Cal. May 31, 2013) ("Thus, even if for a short duration, § 970 still requires a relocation of residence, and not merely a site visit.").  Put differently, it is the consummation of the relocation instead of the duration that is the focus of the Court's inquiry.  Thus, even if Plaintiff only lived in Nevada for one week prior to her termination, this would suffice to state a *prima facie* claim under NRS § 613.010 if the move was precipitated by Defendant's alleged fraudulent inducement.

[3] As the Court finds that dismissal is warranted for the reasons set forth above, it declines to examine Defendant's remaining arguments.